David J. D'Addio
Ivan Panchenko
SECURITIES AND EXCHANGE COMMISSION
Boston Regional Office
33 Arch St., 24th Floor
Boston, MA 02110
(617) 573-8900

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RUIMIN XIE,<br><br>Defendant. | COMPLAINT<br><br>Civil Action No. 24-cv-_____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges the following against the defendant:

### SUMMARY

1. This case involves insider trading by New Jersey resident Ruimin Xie in the securities of his former employer, Canada-based BELLUS Health Inc. ("Bellus Health"), in advance of the April 18, 2023 public announcement that United Kingdom-based pharmaceutical company GSK plc. ("GSK") would acquire BELLUS Health (the "Announcement").

2. On April 9, 2023, Xie, who was BELLUS Health's Director of Analytical Development, learned that GSK was conducting due diligence of BELLUS Health. Due diligence generally refers to the process of assessing a company before entering a business

arrangement with it.  Between April 9 and April 11, 2023, Xie drafted responses to certain of GSK's due diligence questions regarding the quality and safety of BELLUS Health's only drug product, which was in late-stage development.

3. The day after Xie finished drafting responses to GSK's due diligence questions, he began purchasing BELLUS Health common stock and call options, a type of security that is typically purchased if the buyer believes the company's stock price will increase.[1]  Xie attempted to purchase BELLUS Health securities for four consecutive trading days, from April 12 to April 17, 2023, in brokerage accounts in his own name and in the name of his spouse.  Before April 12, 2023, Xie had never purchased BELLUS Health securities.

4. Over those four consecutive trading days, Xie purchased 7,051 BELLUS Health shares at prices ranging from $6.95 to $7.06 per share, and 10 call options allowing him to purchase another 1,000 BELLUS Health shares for $7.50 per share by April 21, 2023.  He attempted to purchase additional BELLUS Health securities during this period, but his orders were not filled.

5. On April 18, 2023, the day after Xie last purchased BELLUS securities, GSK announced that it would acquire BELLUS Health for $14.75 per share.  The price of BELLUS Health shares increased 99 percent from a closing price of $7.26 per share on April 17 to $14.44 per share on April 18.

6. On April 18, 2023, following the Announcement, Xie sold all of his BELLUS Health call options.  Days later, on April 24, 2024, Xie sold all his BELLUS Health shares.  These trades generated more than $59,000 in unlawful profits.

---

[1] A buyer who purchases a call option for a stock has the opportunity, but not the obligation, to buy that stock for a specific price for a predetermined period.

2

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 27, and 21A(a) of the Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), 78aa, and 78u-1(a)].

8. Defendant, directly and indirectly, made use of the means or instrumentalities of interstate commerce or of the mails or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged herein.

9. Venue lies in this District under Exchange Act Section 27 [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District. Among other things, Xie, who resides in this District, placed orders to purchase and sell BELLUS Health securities from this District.

## DEFENDANT

10. **Ruimin Xie**, age 48, resides in New Jersey. During the insider trading alleged herein, Xie was the Director of Analytical Development at BELLUS Health.

## RELATED ENTITIES

11. **BELLUS Health Inc.**, was a pharmaceutical company incorporated in Canada, with a principal place of business in Laval, Quebec, Canada. BELLUS Health's securities were listed on the Nasdaq until June 2023, when its securities were delisted following the completion of GSK's acquisition of BELLUS Health.

12. **GSK, plc.** is a pharmaceutical company incorporated in the United Kingdom, with a principal place of business in Brentford, England, United Kingdom. GSK has been an SEC-reporting company since 2001, and its American Depositary Shares are listed on the New York Stock Exchange.

## FACTS

I. **Xie Owed a Duty to BELLUS Health Not To Use Confidential Company Information for His Own Purposes, Including for His Securities Trading.**

13. Xie joined BELLUS Health in August 2022 as Director of Analytical Development, a position he held until March 2024. Before joining BELLUS Health, Xie had worked for approximately 15 years in the pharmaceutical industry, first as a laboratory scientist and later in the field of analytical development, which relates to the design and implementation of methods that evaluate (among other matters) the purity, potency, and stability of drug substances and products. As BELLUS Health's Director of Analytical Development, Xie was responsible for leading the analytical development of BELLUS Health's only drug, camlipixant, which was designed to treat refractory chronic cough. In this role, Xie also contributed to BELLUS Health's overall development strategy for camlipixant.

14. Around the time Xie joined BELLUS Health, he executed several agreements that obliged him at all relevant times to maintain in confidence certain information that he learned during his employment—including information relating to potential mergers, acquisitions, and business arrangements—and to refrain from trading in BELLUS Health securities if he possessed material nonpublic information.

15. On July 14, 2022, Xie executed an employment offer letter indicating that, as a BELLUS Health employee, he would "be required to comply with [a] Confidentiality Agreement," "the Company's Disclosure and Trading Policy," and other BELLUS Health policies.

16. On August 1, 2022, Xie executed a confidentiality agreement with BELLUS Health that provided, in relevant part: "The Employee acknowledges, understands and agrees that the Employee will not, at any time during the Employee's employment . . . use or disclose

4

. . . any Confidential Information, except in the best interests of the Company in the course of performing the Employee's duties under this Agreement."

17.  The confidentiality agreement defined "Confidential Information" as "any and all information that concerns or forms part of the activities of the Company," including "its commercial, scientific, or technical activities, . . . [and] its objectives, projects, [and] plans." Xie understood that the confidentiality agreement prohibited using confidential information for the purpose of trading in BELLUS Health securities, among other things.

18.  On August 1, 2022, Xie executed an employment agreement, which, consistent with his offer letter, obliged him to comply with BELLUS Health's Disclosure and Trading Policy (the "Trading Policy").  Xie received a copy of the Trading Policy at the outset of his tenure with BELLUS Health and certified that he read and understood it.

19.  The Trading Policy prohibited BELLUS Health employees from "trading . . . [BELLUS Health] securities while in possession of material information before such information ha[d] been fully disclosed to the public."  The Trading Policy also required BELLUS Health employees with access to material information concerning BELLUS Health to "consult with the CFO or the CEO . . . before purchasing or selling [BELLUS Health] shares or other securities."  The Trading Policy defined "material information" to include "any information that a reasonable investor would consider important in deciding whether to purchase or hold an issuer's securities."  Companies whose stock is publicly traded are often referred to as "issuers" of securities.  The Trading Policy provided several examples of information "reasonably likely to be found material in particular situations," including "proposals, plans or agreements, even if preliminary in nature, involving mergers, acquisitions, divestitures, recapitalizations, strategic alliances, licensing arrangements, or purchases or sales of substantial assets."

5

**II.    April 9 - 11, 2023: Xie Participated in Responding to GSK's Due Diligence Questions Regarding BELLUS Health's Drug Product.**

20.    At all relevant times, camlipixant was BELLUS Health's sole drug in development. On March 31, 2023, following an initial period of due diligence regarding BELLUS Health and camlipixant, GSK offered to acquire BELLUS Health for $12.50 per share in cash.

21.    On April 7, 2023, GSK increased its offer to $14.75 per share in cash. That day, BELLUS Health and GSK entered an exclusivity agreement and began to negotiate the terms of GSK's acquisition of BELLUS Health. Meanwhile, GSK continued to conduct due diligence concerning camlipixant.

22.    At all relevant times, the fact that GSK was conducting due diligence of BELLUS Health and camlipixant was nonpublic information.

23.    On April 9, 2023, Xie's supervisor sent Xie and several of Xie's colleagues a document containing due diligence questions "from GSK" and asked for their help in responding to the questions. Between April 9 and April 11, 2023, Xie helped draft responses to certain of GSK's questions, which concerned matters related to the quality and safety of camlipixant.

24.    Xie completed his portion of the GSK due diligence exercise late on April 11, 2023.

25.    Xie knew, consciously avoided knowing, or was reckless in not knowing that GSK was conducting due diligence concerning BELLUS Health and camlipixant in connection with a material business transaction with BELLUS Health.

**III.    April 12 - 17, 2023:  Xie Purchased and Attempted to Purchase BELLUS Health Securities.**

26.    On April 12, 2023—the day after Xie finished responding to the GSK due diligence questions assigned to him, and having never purchased BELLUS Health securities before—Xie began to place orders for BELLUS Health common stock in his brokerage account and short-term, out-of-the-money BELLUS Health call options in a brokerage account held by his spouse.

27.    An out-of-the-money call option is an option that grants the purchaser the opportunity to purchase a stock at a price (the "strike price") greater than the price at which the stock is currently selling on the market.  Put another way, an out-of-the-money call option is a bet that the price of a security will increase.

28.    In this case, the call options for which Xie placed orders granted him the right to purchase shares of BELLUS Health for $7.50 per share on or before April 21, 2023.  On the dates Xie placed his options orders, the closing price of BELLUS Health shares ranged from $6.95 to $7.19 per share.  Thus, Xie was betting that the price of BELLUS Health shares would rise above $7.50 per share on or before that date.  Otherwise, the call options would expire valueless.

29.    From April 12 through April 17, 2023, Xie placed at least one order each trading day for BELLUS Health stock and short-term, out-of-the-money BELLUS Health call options on the basis of information that he knew, consciously avoided knowing, or was reckless in not knowing was both material and nonpublic.  Because Xie placed limit orders, and the market price for the securities exceeded the limit price of certain of Xie's orders, only some of the orders were filled.  The orders that were executed during this period are summarized below.

| Order Date | Account Owner | Order | Option Expiration Date | Option Strike Price | Amount Filled |
|---|---|---|---|---|---|
| 4/12/2023 | Xie | 4,000 shares | | | 4,000 |
| 4/12/2023 | Spouse | 10 Call Options | 4/21/2023 | $7.50 | 10 |
| 4/14/2023 | Xie | 3,000 Shares | | | 3,000 |
| 4/17/2023 | Xie | 3,000 Shares | | | 51 |

30. The portion of Xie's orders that were filled yielded 7,051 BELLUS Health shares and 10 call options that entitled Xie to purchase a total of 1,000 BELLUS shares at $7.50 per share on or before April 21, 2023.

31. Xie did not disclose his intention to trade BELLUS Health securities to any BELLUS Health officer, director, or employee before placing the orders for BELLUS Health securities described above.

32. Xie knew, consciously avoided knowing, or was reckless in not knowing that the information he possessed about GSK's due diligence of BELLUS Health and camlipixant was material and nonpublic.

33. Xie knew, consciously avoided knowing, or was reckless in not knowing that, by trading on BELLUS Health's confidential information, as alleged above, he was breaching BELLUS Health's policies and his fiduciary duty or similar obligation arising from a relationship of trust and confidence with BELLUS Health.

IV. **April 18, 2023: GSK Announces Acquisition of BELLUS Health, and Xie Sells His BELLUS Securities.**

34. On April 18, 2023, GSK and BELLUS Health announced that GSK would acquire BELLUS Health for $14.75 per share in cash. The price of BELLUS Health shares increased 99 percent, from a close of $7.26 per share on April 17 to a close of $14.44 per share on April 18.

35. On April 18, Xie sold all the BELLUS Health call options (which expired on April 21, 2023) held in his spouse's account. On April 24, 2023, Xie sold all the BELLUS

Health common stock held in his own account.  In all, Xie made more than $59,000 from his unlawful BELLUS Health trades.

## CLAIM FOR RELIEF
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5)

36. Paragraphs 1 through 35 above are re-alleged and incorporated by reference as if fully set forth herein.

37. Xie, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, intentionally, knowingly or recklessly, (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

38. By reason of the conduct described above, Xie violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A. Enter a permanent injunction restraining Xie, his agents, servants, employees and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, from violating Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5] by:  (i) buying or selling a security of any issuer, on the basis of material nonpublic information, in breach of a fiduciary duty or other duty of trust or confidence that is owed directly, indirectly, or

derivatively, to the issuer of that security or the shareholders of that issuer, or to any other person who is the source of the information; or (ii) communicating material nonpublic information about a security or issuer, in breach of a fiduciary duty or other duty of trust or confidence, to another person or persons for purposes of buying or selling any security

  B. Order Xie to disgorge, with prejudgment interest, all ill-gotten gains obtained by reason of the unlawful conduct alleged in this Complaint pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

  C. Order Xie to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

  D. Bar Xie from acting as an officer or director for a period of five years pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

  E. Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

  F. Grant such other and further relief as this Court may deem just and proper.

## JURY DEMAND

The Commission demands a jury in this matter for all claims so triable.

DATED:  October 15, 2024.

            Respectfully submitted,

            */s/ David J. D'Addio*
            David J. D'Addio
            Ivan Panchenko
            Boston Regional Office
            33 Arch St., 24th Floor
            Boston, MA 02110
            Tel:  (617) 573-8900
            Email:  Daddiod@sec.gov

**LOCAL RULE 11.2 CERTIFICATION**

      Pursuant to Local Rule 11.2, I certify that the matter in controversy alleged against the Defendant in the foregoing Complaint is not the subject of any other civil action pending in any court, or of any pending arbitration or administrative proceeding.

<u>/s/ *David J. D'Addio*</u>
David D'Addio
Ivan Panchenko
Attorneys for Plaintiff
U.S. SECURITIES AND EXCHANGE COMMISSION
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
Tel:  (617) 573-8900
Email:  Daddiod@sec.gov

## DESIGNATION OF AGENT FOR SERVICE

       Pursuant to Local Civil Rule 101.1(f), because the Securities and Exchange Commission does not have an office in this District, the undersigned hereby designates the United States Attorney's Office for the District of New Jersey for receipt of service of all notices or papers in this action at the following address:

United States Attorney's Office
District of New Jersey
Attention:  Angela E. Juneau
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ 17102

                                                /s/ *David J. D'Addio*
                                                David D'Addio
                                                Ivan Panchenko
                                                Attorneys for Plaintiff
                                                U.S. SECURITIES AND EXCHANGE COMMISSION
                                                Boston Regional Office
                                                33 Arch Street, 24th Floor
                                                Boston, MA 02110
                                                Tel:  (617) 573-8900
                                                Email:  Daddiod@sec.gov